# Appendix 3

Source: My Sources > Torts > Cases > Tort > Combined Federal Courts Tort Cases
Terms: transfer /5 venue and date geq (11/29/2001)  (Edit Search | Suggest Terms for My Search)
Focus: atleast5(transfer of venue) and "district of columbia" and date geq (11/29/2001)  (Exit FOCUS™)

☑ Select for FOCUS™ or Delivery
☐

2005 U.S. Dist. LEXIS 42885, *

KURT B. KROGER, Plaintiff, v. LEGALBILL.COM LLC, et al., Defendants.

View the Full Docket from LexisNexis CourtLink for 1:04cv2189
Civil Action No. 04-2189 (ESH)

UNITED STATES DISTRICT COURT FOR THE **DISTRICT OF COLUMBIA**

2005 U.S. Dist. LEXIS 42885

April 7, 2005, Decided
April 7, 2005, Filed

**SUBSEQUENT HISTORY:** Summary judgment granted, in part, summary judgment denied, in part by Kroger v. Legalbill.com LLC, 2006 U.S. Dist. LEXIS 45326 (D.D.C., July 6, 2006)

**CORE TERMS:** personal jurisdiction, purposefully, long-arm, resident, venue, domiciled, tortious, general jurisdiction, forum state, reside, exercise of personal jurisdiction, diversity jurisdiction, judicial district, apartment, haled, assurances, audit, trip, lack of personal jurisdiction, substantial connection, business transacted, breach of contract, giving rise, prima facie, jurisdictional, non-resident, transacting, domicile, invoices, subject matter jurisdiction

**COUNSEL:** [*1] For KURT B. KROGER, Plaintiff, Pro se, San Francisco, CA.

For LEGALBILL.COM LLC, Defendant: Timothy Leonard Keegan, BURZIO & MCLAUGHLIN, Washington, DC; Douglas Kevin Spaulding, Melissa Jane Keppel, REED SMITH LLP, Washington, DC; Paul H. Duvall, KING & BALLOW, La Jolla, CA.

For STEPHEN A. FRENCH, JEFF MCCANDLESS, Defendants: Timothy Leonard Keegan, BURZIO & MCLAUGHLIN, Washington, DC; Douglas Kevin Spaulding, REED SMITH LLP, Washington, DC; Paul H. Duvall, KING & BALLOW, La Jolla, CA.

**JUDGES:** ELLEN SEGAL HUVELLE, United States District Judge.

**OPINION BY:** ELLEN SEGAL HUVELLE

**OPINION: MEMORANDUM OPINION**

Plaintiff has brought suit against his former employer, Legalbill.com, LLC ("Legalbill"), and its principals, Stephen French and Jeff McCandless, for breach of contract, fraud, negligent misrepresentation, and violations of the French Labor Code. Before the Court is defendants' motion to dismiss pursuant to Rule 12(b) for lack of personal jurisdiction, lack of subject matter jurisdiction, improper venue, and *forum non conveniens*, or in the alternative to **transfer venue** pursuant to 28 U.S.C. § 1404.

**BACKGROUND**

Legalbill is a legal fee auditing [*2] and analysis firm with approximately thirty employees headquartered in Brentwood, Tennessee. Stephen French is the company's Managing Partner and Jeff McCandless is its Chief Technology Officer. Both are owners of the company. (Compl. PP 9-10.) Plaintiff was employed to act as Legalbill's Managing Director for its Europe, Middle East and Africa ("EMEA") division out of Paris, France from October 2002 through January 2004. (Id. P 7.) Legalbill's goal in hiring plaintiff was to develop new business in Europe. (Defs.' Mot. to Dismiss or in the Alternative to **Transfer Venue** ("Mot.") at 2.)

Plaintiff moved to Paris in late 2001 when his wife was offered a one-year position there. In February 2002, plaintiff contacted French, who was looking for an individual to manage Legalbill's European operations. Plaintiff met with French and McCandless in London that month and continued discussions about possible employment with them. French interviewed plaintiff again in Paris in June 2002 and invited him to Tennessee for further discussions in September 2002. During the Tennessee visit, plaintiff was offered the Managing Director position. The parties discussed plaintiff's compensation package, [*3] and defendants represented that they would assure plaintiff a 30 % interest in revenues from sales initiated from his or EMEA activities if he were willing to forego much of the typical compensation paid to managing directors based in Europe. (Compl. P 26.) According to plaintiff, defendants assured him with specific proposals that they would do their best to maximize the revenues generated from EMEA activities and represented that he would likely be making more than one million dollars a year by 2007.(Id. P 27.) The parties discussed many other aspects of the employment relationship and compensation in detail during the visit and agreed that the terms would be reduced to writing. (See Id. P 28-29.) In late 2002, defendants sent a draft agreement to plaintiff. The agreement was finalized over the next several months and signed by the parties when French visited plaintiff in Paris in February 2003. n1 (Id. P 29.)

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n1 Based on defendants' assurances in September, plaintiff began working for Legalbill in October 2002, although no contract had been signed as of that date.

- - - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - [*4]

Throughout early 2003, plaintiff continued to work in Paris. He set up numerous opportunities for French to meet with potential clients during a trip to Europe in February. In particular, plaintiff and French had a meeting in Germany with Deutsche Lufthansa AG ("Lufthansa"), at which time Lufthansa agreed to submit legal invoices to Legalbill for a free trial period.(Id. P 41, 43) Plaintiff felt that he had "generated the deal" with Lufthansa, and expressed his desire to be included in the Lufthansa sales process as it progressed.(Id. P 44.) A meeting was scheduled for May 30, 2003, in Washington D.C. with Lufthansa personnel and Lufthansa's United States outside counsel, Wilmer, Cutler, & Pickering ("WCP"). The meeting was held at WPC's offices and concluded with the agreement that there would be further meetings between WPC and Legalbill "to assure Lufthansa's desires were satisfied."(Id. P 52.) According to plaintiff, "the WPC attorneys were concerned this regular interaction with Legalbill.com LLC would negatively impact their relationship with Lufthansa and even what attorneys in the D.C. office would work on Lufthansa matters due to increased timekeeping requirements. [*5] "(Id. P 50.)

Over dinner that evening in Washington, D.C., Kroger and French discussed Kroger's future with Legalbill. Kroger alleges that he sought and received assurances that EMEA operations were proceeding as planned.(Id. PP 53-55.) He explained to French that he and his wife had started the process of selling their house in Seattle and would not finalize a sale if there was a chance his employment with Legalbill might be discontinued.(Id. P 56.) Kroger also raised a

number of other specific concerns about the employment relationship which were "put aside" by French's assurances.(*Id.* P 59.) For example, plaintiff had only been paid once as of that date and was thus concerned about cash-flow problems; he also was concerned that defendants wished to alter the agreement that plaintiff would have a 30 % interest in a to-be-created Swiss LLC. According to Kroger, French "personally assured" him that "he would make sure that [plaintiff's concerns] would be promptly taken care of" and that "everything was fine." (*Id.* PP 59-60.) Plaintiff and French spent a total of three nights in Washington.(*Id.* P 45.)

Soon after the Washington, D.C. meeting, plaintiff returned [*6] to Paris and met French in various European cities for another series of potential client and law firm meetings that plaintiff had previously arranged. Throughout the summer of 2003, plaintiff continued to raise concerns about his pay being "brought current" and whether he and his wife should plan to stay in Europe. (*Id.* P 64.) As alleged by plaintiff, French again assured plaintiff that he should plan on being in Europe for the long term and that Legalbill did not have cash flow problems. "Through these and other affirmative representations," plaintiff and his wife were convinced to complete their house sale as planned.(*Id.* P 66.)

Plaintiff continued his marketing efforts for Legalbill in Europe through late 2003 when, on December 18, French informed plaintiff that defendants were "reconsidering" having staff in Europe.(*Id.* P 76.) In early January 2004, plaintiff received a "termination agreement" by e-mail.(*Id.* P 79.) Plaintiff objected to the document's terms and refused to sign it. He attempted to seek unemployment compensation under the French Labor Code, but defendants claimed the French court did not have jurisdiction over them. Plaintiff alleges that as of [*7] that time, defendants "have basically refused to communicate with plaintiff, even through legal counsel."(*Id.* P 82.)

**ANALYSIS**

**I. Subject Matter Jurisdiction**

Defendants move to dismiss on the grounds that neither federal question jurisdiction nor diversity jurisdiction exists. Federal district courts have diversity jurisdiction over suits between citizens of different states and over suits between citizens of a state and an alien where the amount in controversy is more than $ 75,000. 28 U.S.C. § 1332(a). For purposes of diversity jurisdiction, citizenship is determined by where the each party is "domiciled" at the time the suit is filed, which depends on two factors: "physical presence in a state, and intent to remain there for an unspecified or indefinite period of time." *Prakash v. Am. Univ.*, 234 U.S. App. D.C. 75, 727 F.2d 1174, 1180 (D.C. Cir. 1984). Further, "[o]ne can reside in one place but be domiciled in another." *Miss. Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48, 109 S. Ct. 1597, 104 L. Ed. 2d 29 (1989).

It is undisputed that the amount in controversy is more than $ 75,000. Plaintiff contends that diversity of citizenship exists because [*8] defendants are all domiciled in Tennessee and he is domiciled in Maryland. His "official address" in Maryland is a commercial property in which he has an ownership interest but does not reside. His sworn affidavit states that this is the only ownership interest he has in real property in any state or abroad, that he maintains and utilizes a bank account in Maryland, that he filed a state tax return in Maryland for 2003 and will file in Maryland again for 2004, that he was married in and has family residing in Maryland, that he possesses a valid Maryland driver's license, that he is registered to vote in Maryland, and that he and his wife are currently looking to buy a residence there. He also states that he intends to remain in Maryland indefinitely. (Decl. of Kurt B. Kroger ("Kroger Decl.") P 2.)

Defendants argue that because the only residential address plaintiff has given in his legal papers is in France, he is domiciled there and not in Maryland. n2 (Def.'s Reply Br. in Supp.

of Mot. to Dismiss ("Reply") at 3-4.) They assert that jurisdiction is defeated because a citizen of the United States who is not a citizen of any state cannot be a diverse party. See Sadat v. Mertes, 615 F.2d 1176, 1180 (7th Cir. 1980); [*9] Meyers v. Smith, 460 F. Supp. 621, 624 (D.D.C. 1978). This argument is insufficient to rebut plaintiff's evidence of domicile in Maryland. Although Kroger has not provided evidence of home ownership in the state, he has sworn to numerous other indicia of domicile. See Wagshal v. Rigler, 947 F. Supp. 10, 13 (D.D.C. 1996) (sworn declaration of domicile, voting registration, driver's license, and bank account are accepted indicia of domiciliary status); Naegele v. Albers, 355 F. Supp. 2d 129, 135 (D.D.C. 2005) (same). The Court is thus persuaded that plaintiff is domiciled in Maryland, that all defendants are domiciled in Tennessee, and that diversity jurisdiction therefore exists.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n2 Defendants also argue that plaintiff has not met his burden of establishing diversity jurisdiction because he referred to "residence" instead of "citizenship" in his complaint. But in light of plaintiff's *pro se* status, it is appropriate for the Court to read the complaint liberally. See Moskovits v. Drug Enforcement Admin., 774 F.Supp. 649, 652 (D.D.C. 1991) ("The pleadings of a pro se plaintiff are held to a less stringent standard than pleadings drafted by attorneys.") (citing Haines v. Kerner, 404 U.S. 519, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972)). Plaintiff admits that he "simply and mistakenly used the words interchangeably." (Pl.'s Mem. in Opp'n ("Opp'n") at 11.)

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - [*10]

The Court must, however, reject plaintiff's assertion that it may alternatively exercise federal question jurisdiction. Plaintiff argues that Count IV arises under the Rome Convention of 1980 because defendants were obligated to abide by the French Labor Code by virtue of the treaty. He contends that the Court may therefore exercise subject matter jurisdiction pursuant to 28 U.S.C. § 1331. (Opp'n at 7-11.) Section 1331 provides for district court jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C § 1331. This provision is narrowly construed and extends over "only those cases in which a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust, 463 U.S. 1, 27-28, 103 S. Ct. 2841, 77 L. Ed. 2d 420 (1983). The Convention on the Law Applicable to Contractual Obligations, June 19, 1980, 19 I.L.M. 1492 ("Rome Convention"), is a treaty signed by members of the Council of the [*11] European Communities. It applies to "contractual obligations in any situation involving a choice between the laws of different countries," *Id.* at art. 1, para. 1, and establishes applicable law in the absence of a choice of law between the parties. *Id.* at art. 3, para. 1 ("A contract shall be governed by the law chosen by the parties."). The United States is not a contracting party to the Convention and, moreover, the employment agreement between the plaintiff and defendants clearly established that United States law would govern their agreement.(See Compl. Ex. 1 at 6.) Plaintiff cannot, therefore, invoke the Rome Convention as a basis for federal question jurisdiction.

## II. Personal Jurisdiction

Plaintiff bears the burden of establishing the factual basis for the exercise of personal jurisdiction. Edmond v. United States Postal Serv. Gen. Counsel, 292 U.S. App. D.C. 240, 949 F.2d 415, 424 (D.C. Cir. 1991). Plaintiff "can satisfy this burden with a *prima facie* showing, unless the trial court holds an evidentiary hearing." *Id.* (internal citation omitted). However, in evaluating whether a plaintiff has established personal jurisdiction, the Court is "not

FOCUS - 22 Results - transfer /5 venue
Page 5 of 16
Case 1:06-cv-01375-EGS    Document 17-4    Filed 01/10/2007    Page 6 of 17

bound [*12] to treat all of plaintiff's] allegations as true" but instead "may receive and weigh affidavits and other relevant matter to assist in determining the jurisdictional facts." *United States v. Philip Morris Inc.*, 116 F. Supp. 2d 116, 120 n. 4 (D.D.C. 2000) (internal quotation omitted). Defendants challenge the Court's exercise of personal jurisdiction over them, arguing that their activities in the **District of Columbia** are too limited to establish the "minimum contacts" with the judicial forum demanded by due process.

Personal jurisdiction must comport with both state law and constitutional due process. See *Crane v. Carr*, 259 U.S. App. D.C. 229, 814 F.2d 758, 762 (D.C. Cir. 1987). The **District of Columbia** long-arm statute provides, *inter alia*, that local courts may exercise "specific jurisdiction" over a person for claims that arise from the person's "transacting any business" or "causing tortious injury" in the District. n3 D.C. Code § 13-423 (a)(1), (3) (2001). Under D.C. Code § 13-334(a), a court may also exercise "general jurisdiction" over foreign corporations "doing business" in the District, even where the claims [*13] are unrelated to the corporation's contacts here. *Gorman v. Ameritrade Holding Corp.*, 352 U.S. App. D.C. 229, 293 F.3d 506, 509 (D.C. Cir. 2002). n4 Due process demands that each defendant have minimum contacts with the judicial forum such that "the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945); *GTE New Media Services Inc. v. BellSouth Corp.*, 339 U.S. App. D.C. 332, 199 F.3d 1343, 1347 (D.C. Cir. 2000). Moreover, jurisdiction is proper only if the defendant "purposefully established minimum contacts in the forum state." *Asahi Metal Industr. Co. v. Superior Court*, 480 U.S. 102, 112, 107 S. Ct. 1026, 94 L. Ed. 2d 92 (1987); *Manifold v. Wolf Coach, Inc.* 231 F. Supp. 2d 58, 61 (D.D.C. 2002). In short, the defendant "should reasonably anticipate being haled into court' there." *Creighton Ltd. v. Gov't of State of Qatar*, 337 U.S. App. D.C. 7, 181 F.3d 118 (D.C. Cir. 1999) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S. Ct. 559, 62 L. Ed. 2d 490 (1980)).

- - - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n3 Section 13-423 states, in pertinent part:

> (a) A **District of Columbia** court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's --
>
> > (1) transacting any business in the **District of Columbia**;
> >
> > (3) causing tortious injury in the **District of Columbia** by an act or omission in the **District of Columbia**;
>
> (b) When jurisdiction over a person is based solely on this section, only a claim for relief arising from acts enumerated in this section may be asserted against him.

[*14]

n4 Although on its face § 13-334(a) appears only to specify proper methods of service, the **District of Columbia** Court of Appeals has held that compliance with the statute gives rise to personal jurisdiction over a foreign corporation doing business in the District." Id. at 509-10 n.1 (internal citations omitted).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

### A. General Jurisdiction

Plaintiff argues that defendants' contacts with the **District of Columbia** meet the standards for both general and specific personal jurisdiction. (Opp'n at 23-28.) He claims that defendants are subject to general jurisdiction under D.C. Code § 13-334(a) because they carry on a "consistent pattern of regular business activity within the jurisdiction."(Id. at 23 (quoting *Capital Bank Int'l Ltd. v. Citigroup, Inc.*, 276 F. Supp. 2d 72, 75 (D.D.C. 2003)).) While it may be arguable that Legalbill's contacts with Washington, D.C. are continuous and systematic enough to establish that the company is "doing business" here, jurisdiction under § 13-334(a) is only permissible where the plaintiff has fulfilled the [*15] section's procedural requirements, which Kroger has not. Under § 13-334(a), "a plaintiff who serves the corporation by mail outside the District is foreclosed from benefitting from [the statute's] jurisdictional protection." *Gorman*, 293 F.3d at 514 (quoting *Everett v. Nissan Motor Corp.*, 628 A.2d 106, 108 (D.C. 1993)) (alteration in orginal); see *Gowens v. DynCorp*, 132 F. Supp. 2d 38, 42 (D.D.C. 2001) (service in Virginia did not meet requirements of § 13-334 and therefore court was precluded from asserting general jurisdiction). Because plaintiff served defendants in Tennessee -- defendants do not even maintain a registered agent in the **District of Columbia**-the Court cannot exercise general jurisdiction over defendants pursuant to § 13-334(a). Rather, it may only exercise *specific* jurisdiction over defendants for claims arising from their actions in Washington, D.C. See D.C. Code § 13-423(b) ("When jurisdiction over a person is based solely upon this section, only a claim for relief arising from acts enumerated in this section may be asserted against him."). See also, e.g., *Ross v. Prod. Dev. Corp.*, 736 F. Supp. 285, 289 (D.D.C. 1989) [*16] ("Courts have uniformly held that subsection (a)(1) confers personal jursidiction over a defendant only if the plaintiff's claim arises from the defendant's contacts with the District.").

### B. Specific Jurisdiction

Plaintiff argues that defendants are subject to specific jurisdiction under the **District of Columbia** long-arm statute by virtue of their "transacting . . . business" in the District, or alternatively, "causing tortious injury" here. D.C. Code § 13-423(a)(1), (3).(See Opp'n at 22-24.) The Court will consider each defendant in turn. See *First Chicago Int'l v. United Exchange Co.*, 267 U.S. App. D.C. 27, 836 F.2d 1375, 1378 (D.C. Cir. 1988)(prima facie case of personal jurisdiction must be shown with respect to each defendant individually); *Overseas Partners, Inc. v. PROGEN Musavirlik ve Yonetim Hizmetleri, Ltd. Sikerti*, 15 F.Supp.2d 47 (D.D.C. 1998) (same).

Under § 13-423(a)(1), the Court may exercise specific jurisdiction if plaintiff shows: (1) that the defendant transacted business in the District; (2) that the claim arose from the business transacted in the District and (3) that the defendant had minimum contacts such [*17] that the Court's exercise of personal jurisdiction would not offend "traditional notions of fair play and substantial justice." See *Schwartz v. CDI Japan, Ltd.*, 938 F. Supp. 1, 4-5 (D.D.C. 1996) (quoting *Int'l Shoe*, 326 U.S. at 316); see also *Cellutech, Inc. v. Centennial Cellular Corp.*, 871 F. Supp. 46, 48 (D.D.C. 1994).

### 1. Legalbill

Legalbill is a Tennessee corporation with its principal place of business in Brentwood,

Tennessee. (Mot. at 2.) It does not maintain offices or a registered agent in the **District of Columbia** and none of its clients' corporate headquarters is here. (Reply at 6.) Plaintiff nevertheless argues that Legalbill purposefully transacts business within the **District of Columbia** through its interaction with Washington, D.C. law firms. (Opp'n at 23.) According to plaintiff, "[t]he business model for European operations was to tap European companies' use of USA based law firms."(Id. at 28.) Although Legalbill does not have a direct contractual relationship with the law firms, it has ongoing contact with them on behalf of its clients. In particular, the Lufthansa contract requires Legalbill employees [*18] to maintain continuous contact with Lufthansa's law firm, WCP, which is based in the District. Legalbill receives invoices for review directly from the firm each month and the firm must appeal the resulting audit reports directly to Legabill.(See Opp'n Ex. C-4, *Introduction to Legalbill Methodology: Appeal Process* (flowchart depicting many points of contacts between Legalbill and clients' law firms).) However, the "business of preparing the reviews of legal bills is in Tennessee." (Reply at 6.) n5

- - - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n5 As noted by plaintiff, Legalbill's work also has an impact within the **District of Columbia**. For example, plaintiff alleges that Legalbill's audits reduced WCP's revenue by tens of thousands of dollars last year. (Compl. P 51.) This is signficant because " [t]ransacting any business' within the meaning of [§ 13-423(a)(1)] embraces those contractual activities of a nonresident defendant which cause a consequence in the District." *Overseas Partners, Inc.*, 15 F. Supp. 2d at 51.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

Given these [*19] undisputed facts, the Court concludes that Legalbill "transacts business" within the District for purposes of § 13-423(a)(1). This Court has specifically stated that "performing a contract within the District constitutes transacting business' even where defendant did not physically travel to the district to do so." *Schwartz v. CDI Japan*, 938 F. Supp. 1 (D.D.C. 1996). See also *Dooley*, 786 F. Supp. 65 (D.D.C. 1992) (telephone calls and mailings to forum state can constitute "transacting business"); *Smith v. Jenkings*, 452 A.2d 333 (D.C. 1982). Legalbill has contracted with Lufthansa to audit WCP's invoices. Performance of this contract requires continuous contact with Washington, D.C. and has involved at least one business trip to the District. Although Legalbill reviews bills in Tennessee, the business also entails frequent communication with WCP. Defendants cannot therefore carve out their Washington D.C. contacts as "tangential" to performance of the Lufthansa contract. (Mot. at 2.)

A finding that Legalbill transacts business in the District does not, however, end the inquiry under the long-arm statute. The more difficult question [*20] is whether plaintiff's claims *arise from* Legalbill's business transactions in Washington, D.C. See D.C. Code § 13-423(b); *Gorman*, 293 F.3d at 509 (because plaintiff's breach of contract claim did not arise out of any business transacted between the parties in the District, § 423(a)(1) was unavailable as a basis for personal jurisdiction); *Jungquist v. Sheikh Sultan Bin Khalifa Al Nahyan*, 325 U.S. App. D.C. 117, 115 F.3d 1029, 1032 (D.C. Cir. 1997) (**District of Columbia** long-arm statute "confers not general jurisdiction, but personal jurisdiction specific to the claims arising out of actions related to the **District of Columbia**"); *Willis v. Willis*, 211 U.S. App. D.C. 103, 655 F.2d 1333, 1336 (D.C.Cir. 1981) (§ 423(b) serves as an effective "bar to claims unrelated to the acts forming the basis for personal jurisdiction"); *Ross*, 736 F. Supp. at 289 (although defendant "clearly" transacted business in the **District of Columbia**, Court moved on to consider whether plaintiff's claim arose from defendant's contacts with the District).

The **District of Columbia** Court of Appeals most recently examined the nexus requirement of § 13-423(b) [*21] in *Shoppers Food Warehouse v. Moreno*, 746 A.2d 320 (D.C. 2000). There, a **District of Columbia** resident brought a personal injury action against a non-resident grocery corporation for injuries sustained in a Maryland store. The court held that exercise of personal jurisdiction was proper based on the store's "extensive advertising in the Washington Post." *Id.* at 336. The court interpreted the "arise from" language "flexibly and synonymously with relate to' or having a substantial connection with,' in the same way that the Supreme Court's due process analysis has used these terms interchangeably." *Id.* at 333. The court stated that the claim raised could "arise out of *or* relate to" the business activity, and need only have a "discernable relationship to the business transacted in the District." *Id.* (quoting *Burger King*, 417 U.S. at 472) (emphasis added). Further, "this discernable relationship is shown if certain minimum contacts' between the nonresident and the forum" exist. *Id.* Ostensibly limiting the reach of specific jurisdiction under this test, the court focused on the requirement that a defendant [*22] "purposefully direct its activities at forum residents." *Id.* at 337. This collapsing of the statutory inquiry and minimum contacts test is consistent with the analysis of federal courts. *See Schwartz*, 938 F. Supp. at 8 (inquiring "whether the non-resident's conduct and connection with the forum state are such that he or she should reasonably anticipate being haled into court there'" to determine whether plaintiff's claim "arose from" the business transacted by the defendants in the District); *see also Koteen v. Bermuda Cablevision, Ltd.*, 286 U.S. App. D.C. 207, 913 F.2d 973, 974-75 (D.C. Cir. 1990) (acknowledging relatedness requirement of the D.C. long-arm statute and moving on to consider whether defendant purposefully established minimum contacts).

Applying these principles, this Court first considers whether there is a "discernible relationship" between Legalbill's activities in the District and plaintiff's breach of contract claim. n6 The contract between Kroger and Legalbill was negotiated in Tennessee and Europe and its terms made no mention of potential trips to the **District of Columbia** or efforts to seek out business there.(*See* Compl. Ex. 1 (Employment [*23] Agreement).) The contract concerned the proposed development of a Swiss LLC by which plaintiff would promote Legalbill's business in Europe and the Middle East.(*Id.*) Kroger carried out his duties almost exclusively in Europe, in consultation with Legalbill's Tennessee office. Plaintiff maintains that his claims nevertheless arose out of Legalbill's activities in the District because he helped negotiate the Lufthansa contract and is entitled to a portion of the revenues raised as a result of this business. He contends that his "damages are directly tied to the business Defendants have done and will do with WCP as the revenues from those audits directly impacts the value of Plaintiff's ownership interest in Legalbill services revenues and what he is owed commission wise [sic] under his employment agreement" and argues that "WPC was one of Plaintiff's accounts he established for Defendants and the WCP/Lufthansa business meeting was the primary reason Plaintiff and Defendant were in the District." (Opp'n at 24.) Defendants counters that, other than the one meeting in this forum, "[a]ll other business contacts between the defendants, the plaintiff and their respective clients were [*24] either in Tennessee or Europe."(*Id.* at 5.) Moreover, they argue, Legalbill has not purposefully directed its activities towards **District of Columbia** residents; the choice of **District of Columbia** law firms rests with Legalbill's clients, not Legalbill itself. (Mot. at 3, 10.)

- - - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n6 Because specific jurisdiction is based on the relationship between defendants' contacts and each particular claim, plaintiff's claims must be analyzed separately. *See generally Remick v. Manfredy*, 238 F.3d 248, 255 (3d Cir. 2001) ("[T]hat the District Court has specific personal jurisdiction over a defendant as to a particular claim asserted by [plaintiff] does not necessarily mean that it has personal jurisdiction over that same defendant as to [plaintiff's] other claims."); *see also Helmer v. Dolestkaya*, 393 F.3d 201, 364 U.S. App. D.C. 178 (D.C. Cir. 2004) (holding that the district court had personal jurisdiction with respect to some

claims and not others and remanding for the determination of pendent jurisdiction).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - [*25]

While plaintiff's claim appears to be at least "related to" Legalbill's activities in the District, applying the minimum contacts test as directed in *Shoppers* requires further analysis. In evaluating minimum contacts in the context of contract claims, courts have repeatedly held that there should be a "substantial connection" between the contract giving rise to the claim and the forum state. See generally *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985) (Michigan franchisee was subject to personal jurisdiction in Florida by virtue of longstanding contract with Burger King headquarters, a Florida resident); see also, e.g., *Hasenfus v. Corporate Air Servs.*, 700 F. Supp. 58, 63 (D.D.C. 1988). In the recent case of *Helmer v. Doletskaya*, 364 U.S. App. D.C. 178, 393 F.3d 201 (D.C. Cir. 2004), this Circuit was faced with a claim of jurisdiction under § 423(a)(1) and considered the "substantial connection" requirement in detail. Helmer was a United States citizen who brought suit against his former girlfriend, Doiestkaya, a citizen of Russia. Helmer and Doletskaya had lived together in Moscow for several years. During a visit to Helmer's **District of [*26] Columbia** residence one summer, they agreed that Helmer would financially support Doletskaya until her career was established, at which point she would repay him. The agreed upon financial support included Doletskaya's use of Helmer's credit cards on the condition that the monthly billing statements would be sent to Helmer's **District of Columbia** residence. Doletskaya also agreed to arrange for the purchase of their Moscow apartment in Helmer's name. After the couple returned to Moscow, Doletskaya purchased the Moscow apartment in her own name with a cash payment by Helmer. Four years after the relationship ended, when Dolestkaya had established her financial independence and Helmer discovered the Moscow apartment was not in his name, Doletskaya refused to transfer the apartment to Helmer or to repay his financial support. After an unsuccessful suit in a Moscow court, Helmer brought suit for fraud and breach of contract in the United States District Court for the **District of Columbia**. The District Court dismissed his complaint for lack of personal jurisdiction.

Noting that courts "must evaluate the prior negotiations and contemplated future consequences, along with the terms of the [*27] contract and the parties' actual course of dealing'" to determine whether the defendant "purposefully established minimum contacts within the forum," the Circuit considered each contract in turn. *Id.* at 205 (quoting *Burger King Corp.*, 471 U.S. at 479) (internal quotations omitted in original). As to the contract for repayment of credit card charges, the Court determined that "[b]ecause the contract was formed in the **District of Columbia**, the corpus of the contract involved credit cards issued to a **District of Columbia** resident and registered with a **District of Columbia** address, and the parties contemplated future repeated contacts with the **District of Columbia** as a condition of performance . . . the contract had a substantial connection with the **District of Columbia**" and Doletskaya purposefully availed herself of the benefits and protections of D.C. laws such that she should have reasonably anticipated being haled into court here. *Id.* at 206. On the other hand, the contract to purchase the Moscow apartment was "negotiated and performed wholly outside the **District of Columbia**, and involved only a single fortuitous contact with the **District of [*28] Columbia**." *Id.* Although this contract was formed in the **District of Columbia**, it was formed there because the parties were on vacation, not because Doletskaya solicited business there. Thus, this contact was "insignificant in the scheme of the parties' dealings." *Id.* at 207 (citing *Freiman v. Lazur*, 925 F. Supp. 14 (D.D.C. 1996)).

The negotiation of the Kroger-Legalbill contract took place outside the District and, on its face, the contract contemplated Kroger's activities in Europe exclusively. Defendants argue that the parties' course of dealing also took place outside the District, with the exception of one business meeting. The facts alleged by plaintiff suggest a much stronger connection

between his employment with Legalbill and the **District of Columbia.** According to plaintiff, not only did he play a key role in establishing the relationship with WCP -- necessitating activities in the District -- but the **District of Columbia** law firm audits relating to the Lufthansa account were in fact the *only* source of revenue for the EMEA region operations in 2003 and early 2004 (Kroger Decl. P 5), and his contract claim is based in large part on his entitlement [*29] to this revenue. Defendants have not disputed this allegation. Thus, despite frequent meetings and correspondence between French and Kroger in Europe(*see* Compl. PP 33-44, 62-82), the Court cannot conclude that the Legalbill's Washington, D.C. contacts were an insignificant aspect of the "scheme of the parties' dealings" as a whole. *Helmer,* 393 F.3d at 207. Moreover, Legalbill purposefully availed itself of the privilege of conducting business in the District. The company hired plaintiff to generate sales in Europe, with the "contemplated future consequence" that this would result in work involving the review of invoices of **District of Columbia** law firms retained by large European businesses and trips to the District. *Helmer,* 393 F.3d at 205. And, in contracting with Lufthansa, Legalbill expressly agreed to carry out activities in the **District of Columbia** and in fact did so. Thus, plaintiff's contract claim meets the requirements of § 13-423(b), as defined by *Shoppers* and the minimum contacts test. n7

- - - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - - -

n7 Kroger's situation is similar to that of the plaintiff in *Schwartz.* Like Kroger, Schwartz was not a D.C. resident. He was retained by defendant CDI Japan's predecessor in interest to act as its authorized representative in the United States. CDI Japan had contracted with the Smithsonian Institution's National Museum of American Art to produce interactive CDs that would educate consumers about the museum's collections. After Schwartz helped execute the Smithsonian contract through numerous trips into the District, and discussed other potential projects with the Smithsonian, CDI Japan informed him that he was no longer authorized to act for the company. He sued for breach of an agency contract. The Court determined that Schwartz's claim "[arose] from the defendants' activities in the District" because "centrally involved in [the] suit [was] the alleged agency relationship that existed between the plaintiff and the defendants as a result of the parties' course of dealing and the Smithsonian contract." 938 F. Supp. at 8. As such, personal jurisdiction over CDI Japan was consistent with the District's long-arm statute and due process. In contrast, contracts found not to establish minimum contacts have had very little connection with the forum. *See, e.g., Hasenfus,* 700 F. Supp. at 62-64 (court lacked specific jurisdiction over claim for breach of written employment contract between Wisconsin resident and Florida-based corporation which involved activities in Wisconsin, Central America, and Florida); *see also Moskovits v. Drug Enforcement Admin.,* 774 F. Supp. 649 (D.D.C. 1991) (**District of Columbia** court did not have long-arm jurisdiction over Drug Enforcement Administration attorney with respect to claims arising out of forfeiture where search warrant leading to seizure was issued in the Eastern District of Pennsylvania, attorney was a resident of Virginia and was employed in Virginia, and injuries to the claimant occurred in either Pennsylvania or Florida).

- - - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - [*30]

In addition, plaintiff's fraud and negligent misrepresentation claims are based on discrete acts that took place while Legalbill was transacting business in Washington, D.C. n8 In Counts II and III plaintiff alleges that during the few days French n9 and plaintiff spent in D.C., French made false or negligent "representations and assurances" upon which plaintiff relied to his detriment. (Compl. PP 93-98.) Defendants argue that "despite the voluminous attention in the complaint," the statements made in Washington, D.C. are so minor in comparison to the other activities giving rise to plaintiff's claim that they do not establish minimum contacts. (Reply at 5.) However, while defendants could have offered affidavits or other evidence to rebut plaintiff's *prima facie* showing that the statements made by French in

Washington, D.C. gave rise to plaintiff's claims, they have not done so. Furthermore, the long-arm statute does not require that the claim arise *solely* from D.C. activities. *Chrysler Corp. v. General Motors Corp*, 589 F. Supp. 1182, 1205 (D.D.C. 1984) (once claim is related to acts in District, statute does not require that scope of claim be limited to [*31] activity within jurisdiction); *Cohane v. Arpeja-California, Inc.*, 385 A.2d 153, 158-59 (D.C. 1978) (since the **District of Columbia** had personal jurisdiction over defendant clothing manufacturer who sold suits in the District, it could also entertain plaintiff salesman's claims for commissions earned in three nearby states included in his selling region). The fact that plaintiff may have also relied on assurances made in Europe later that year (see Compl. P 98) does not necessarily defeat his *prima facie* showing of a nexus between Counts II and III and Legalbill's business activities in the forum.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n8 Although a separate provision of the long-arm statute provides for jurisdiction over a person "causing tortious injury" in the District, a plaintiff bringing a tort claim that arises from a corporation's transaction of business in the District may rely on § 13-423(a)(1) as a source of personal jurisdiction as well. See generally *Shoppers Food Warehouse*, 746 A.2d at 323.

n9 The acts of a corporation's agent may create personal jurisdiction over the corporation in the District. D.C. Code § 13-423(a); *Schwartz*, 938 F. Supp. at 7. Because French is Legalbill's agent, his actions in Washington, D.C. may be attributed to Legalbill for purposes of this analysis.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - [*32]

As discussed above, the minimum contacts test also requires a showing that defendant "purposefully availed itself" of the benefits and privileges of conducting activities in Washington D.C. "such that it should reasonably anticipate being haled into court here." *World-Wide Volkswagen Corp*. 444 U.S. at 297. n10 Neither this Court nor the **District of Columbia** Court of Appeals has addressed the precise question of whether traveling to the District for business purposes and making a misrepresentation to a non-resident while there is sufficient to establish specific personal jurisdiction. But, despite defendants' protestations, it is certainly the case that a "single event" or a "single meeting" can suffice. (Mot. at 10.) See *Richter v. Analex Corp.*, 940 F. Supp. 353, 360 (D.D.C. 1996) (defendant's conduct during one meeting in Washington, D.C. may have given rise to tort and contract action and, as a result, case against that defendant could not be dismissed for lack of jurisdiction). Other courts have also suggested that a single misrepresentation in a forum can establish personal jurisdiction there. For example, the Third Circuit stated that "[p]ersonal [*33] jurisdiction may be exercised over a non-resident defendant who, while present in the forum state, makes a deliberate misrepresentation during the course of negotiations or other direct oral communications with the plaintiff." *Carteret Sav. Bank, F.A. v. Shushan*, 954 F.2d 141, 146 (3d Cir. 1992). See also, *RNW Assocs., Inc. v. Corporate Underwriters, Ltd.*, 45 F.3d 440 (10th Cir. 1994) (quoting same); *LAK, Inc. v. Deer Creek Enterprises*, 885 F.2d 1293 (6th Cir. 1989) (a showing that misrepresentations occurred in forum state bolsters argument for personal jurisdiction). Indeed, French, as Legalbill's agent, purposefully traveled to the **District of Columbia** and met with plaintiff, allegedly knowing that statements he made there might be relied upon by plaintiff in the future. As a result of these activities, Legalbill should have anticipated that it could be haled into court in the District.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n10 Since the Court is considering *specific* jurisdiction under § 13-423(b), its analysis with respect to Kroger's contract claim is not sufficient to sustain the exercise of jurisdiction over plaintiff's fraud and negligent misrepresentation claims.

- - - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - [*34]

The final question that must be answered before concluding that personal jurisdiction exists with respect to Counts I, II, and III is whether the exercise of personal jurisdiction would offend "traditional notions of fair play and substantial justice." *Int'l Shoe*, 326 U.S. at 316. This standard "focuses on the reasonableness of pursuing the litigation in the forum." *Dooley v. United Technologies Corp.*, 786 F.Supp. 65, 73 (D.D.C. 1992). Reasonableness is evaluated with reference to "the burden on the defendant, the interests of the forum State, . . . the plaintiff's interest in obtaining relief[,] . . . the interstate judicial system's interest in obtaining the most efficient resolution of controversies[,] and the shared interest of the several States in furthering fundamental substantive social policies." *Asahi*, 480 U.S. at 113.

Legalbill has not shown why defending a lawsuit in this jurisdiction would result in any particular burden. Nor has plaintiff demonstrated why he would be overly burdened if he had to travel to Tennessee, the other obvious forum for this dispute. However, the plaintiff's choice of forum is usually favored [*35] and it is obviously more convenient for him given his Maryland domicile. As for the efficient resolution of controversies, there are witnesses in both Washington, D.C. and Tennessee and the documentary evidence existing in Tennessee is not likely to be substantial. Finally, the fact that no party to the lawsuit is a resident weighs against asserting personal jurisdiction here. "If plaintiff is not a resident of the forum, the forum state's legitimate interests in the dispute have considerably diminished." *Formica v. Cascade Candle Co.*, 125 F.Supp.2d 552 (D.D.C. 2001). On balance, the Court finds it fair and reasonable to exercise personal jurisdiction over Legalbill with respect to Counts I, II, and III.

The relationship between plaintiff's French Labor Code claims and Legalbill's Washington, D.C. activities is, on the other hand, far too attenuated to comply with § 13-423(b) or due process. The French Labor Code violations alleged by plaintiff in Count IV relate to defendants' failure to "establish[] the required process and timeline for terminating employees working in France." (Compl. P 102.) Essentially, plaintiff alleges a "wrongful discharge under French [*36] law."(*Id.* P 107.) These claims do not "arise from" defendants' transacting business in the District.

**2. Stephen French and Jeff McCandless**

Personal jurisdiction over employees or officers of a corporation in their individual capacities generally must be based on their personal contacts with the forum and not on acts carried out solely on behalf of the corporation. *Richard v. Bell Atlantic Corp.*, 946 F. Supp. 54 (D.D.C. 1996). Plaintiff does not allege that French or McCandless had personal contacts with the forum apart from their actions as corporate officers. In fact, there is no evidence that McCandless had any contact whatsoever with the **District of Columbia**. Thus, plaintiff has not met its burden of making *a prima facie* showing of personal jurisdiction over either French or McCandless.

Plaintiff's argument that jurisdiction over the individual defendants is proper because Legalbill is their "alter ego" fails. It is well-accepted that where an affiliated party (be it individual or corporate) is an alter ego of a corporation over which the court has personal jurisdiction, "the corporation's contacts may be attributed to the affiliated party for jurisdictional [*37] purposes." *Shapiro, Lifschitz, & Schram, P.C. v. Hazard*, 90 F. Supp. 2d 15, 22 (D.D.C. 2000). In these circumstances, it is appropriate to treat the corporation and its individual

owner as one entity. See *Patin v. Thoroughbred Power Boats Inc.*, 294 F.3d 640, 653 & n.18 (5th Cir. 2002) ("The theory underlying these cases is that, because the two corporations (or the corporation and its individual alter ego) are the *same entity*, the jurisdictional contacts of one *are* the jurisdictional contacts of the other for the purposes of the *International Shoe* due process analysis."); *Home-Stake Prod. Co. v. Talon Petroleum, C.A.*, 907 F.2d 1012, 1020-21 (10th Cir. 1990) ("In such situations, attribution of contacts to the individual defendant merely reflects the reality that, although the contacts were ostensibly those of the corporation, the true actor was the individual."). Legalbill is a corporation with thirty employees. Jeff McCandless is merely its Chief Technology Officer. Stephen French may be in charge of the company, but he is hardly indistinguishable from it. Thus, without any further showing, plaintiff's claims must be dismissed [*38] with respect to the individual defendants. n11

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n11 Although personal jurisdiction over Legalbill has already been established under § 423(a)(1), the Court notes that it would *not* be available under § 423(a)(3) for either Legalbill or the individual defendants. The **District of Columbia** long-arm statute provides for personal jurisdiction where a person causes tortious injury in the District. D.C. Code § 13-423(a)(3). This provision is "a precise and intentionally restricted tort section which stops short of the outer limits of due process, and requires that both act and injury occur in the **District of Columbia**." *Helmer*, 393 F.3d at 208 (internal citations omitted). The main issue is whether any of the defendants in fact "caused tortious injury within the District." See *Helmer*, 393 F.3d at 208; D.C. Code § 13-423(a)(3). While the allegedly false statements were made in Washington, D.C., and therefore plaintiff has properly alleged tortious *acts* in the District, plaintiff's *injury* did not occur here. See *Freiman*, 925 F. Supp. at 23 (tortious act in **District of Columbia** was not enough to establish personal jurisdiction where injury occurred elsewhere); *Helmer*, 393 F.3d at 208-09 (situs of injury is where "the original events that caused the alleged injury" occurred). While plaintiff claims that the false or negligent representations by defendants induced him to continue in his employment, to work at below market salary, to advance business expenses for Legalbill using his personal funds, and to sell his home in Seattle (Compl. PP 94-95), these injuries did not occur within the **District of Columbia**, since Kroger was not living here, had no bank accounts here, and his salary was paid from the Tennessee office.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - -

[*39]

## III. Defendants' Other Grounds for Dismissal

Neither abstention nor *forum nonconveniens* provides grounds for dismissing the case. As defendant correctly notes, "abstention from the exercise of federal jurisdiction is the exception, not the rule." *Colo. River Water Conservation Dist., et al. v. United States*, 424 U.S. 800, 813, 96 S. Ct. 1236, 47 L. Ed. 2d 483 (1976). There is no reason for the Court to invoke this exception here. Likewise, a federal court may only dismiss a case based on *forum nonconveniens* where transfer under 28 U.S.C. § 1404(a) is not an available option. That is not the case here. Defendants themselves argue that transfer to the Middle District of Tennessee would be appropriate. (Mot. at 14, Reply at 7.)

## IV. Venue

The federal venue statute provides that:

A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial [*40] part of the property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391 (a). Since the Court has concluded that this action must be dismissed for lack of personal jurisdiction with respect to the individual defendants, venue is proper under § 1391(a)(1) in a judicial district where Legalbill alone "resides." Under 28 U.S.C. § 1391(c), "a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction." Thus, venue is proper in the **District of Columbia** based on Legalbill's "residing" here and the Court need not determine whether a "substantial part of the events or omissions giving rise to the claim" occurred here, as is contested by the parties. 28 U.S.C. § 1391(a)(2).

Although venue is proper, the Court still has authority to transfer plaintiff's case to another court "in which it might have been brought" for the convenience of the [*41] parties or witnesses, or if the interest of justice so requires. 28 U.S.C. § 1404. The decision to transfer is "within the sound discretion of the district court." Naartex Consulting Corp. v. Watt, 232 U.S. App. D.C. 293, 722 F.2d 779, 790 (D.C. Cir. 1983). Defendants argue that because their defense will be to "show that the plaintiff was a failure as a salesman," the "basic facts relating to the formation of the employment contract and plaintiff's termination rest with witnesses in Tennessee, Europe, and the plaintiff." (Reply at 7.) n12 But *this* forum, not Tennessee, would likely be more convenient for European witnesses. Moreover, any added convenience for Legalbill and Tennessee witnesses resulting from a transfer to the Middle District of Tennessee is outweighed by the inconvenience that such a transfer would pose for Kroger. n13 See Thayer/Patricof Educ. Funding v. Pryor Res., 196 F. Supp. 2d 21, 31 (D.D.C. 2002) (plaintiff's choice of forum is generally given deference in determining whether a **transfer of venue** is justified). As such, the considerations raised by defendants do not justify a transfer.

- - - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n12 Defendants also point to Davis v. Am. Soc'y of Civ. Eng'rs, 290 F. Supp. 2d 116, 120 (D.D.C. 2003), to support their argument. (Mot. at 12.) In Davis, however, the Court transferred the case pursuant 28 U.S.C. § 1406(a) as an alternative to *dismissing* the action for improper venue. Here, on the other hand, the Court can ensure orderly adjudication of the case without transferring it to another district. [*42]

n13 The Court also notes that defendants are now represented by **District of Columbia**-based counsel, which should facilitate defending a lawsuit here.(See Defs.' Notice of Appearance, Mar. 29, 2005.)

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - -

**CONCLUSION**

For the reasons stated above, defendants' motion to dismiss is denied with respect to Legalbill, except that plaintiff's French Labor Code claim (Count IV) against Legalbill is dismissed for lack of personal jurisdiction. Defendants' motion to dismiss is granted with respect to defendants French and McCandless. Defendants' motion in the alternative to **transfer venue** is denied. A separate Order accompanies this Memorandum Opinion.

ELLEN SEGAL HUVELLE

United States District Judge

Date: April 7, 2005

**ORDER**

For the reasons set forth in the attached Memorandum Opinion, it is hereby

**ORDERED** that defendants' Motion to Dismiss is **GRANTED** with respect to Stephen French and Jeff McCandless and **GRANTED IN PART AND DENIED IN PART** with respect to Legalbill.Com LLC; and it is further

**ORDERED** that defendants' Motion in the Alternative to **Transfer [*43] Venue** is **DENIED**; and it is further

**ORDERED** that plaintiff's claims against Stephen French are **DISMISSED** without prejudice; and it is further

**ORDERED** that plaintiff's claims against Jeff McCandless are **DISMISSED** without prejudice, and it is further

**ORDERED** that Count IV of plaintiff's complaint is **DISMISSED** without prejudice; and it is further

**ORDERED** that an Initial Scheduling Conference is set for April 26, 2005 at 10:45 am in Courtroom # 18.

s/

ELLEN SEGAL HUVELLE

United States District Judge

Date: April 7, 2005

Source: My Sources > Torts > Cases > Tort > Combined Federal Courts Tort Cases
Terms: transfer /5 venue and date geq (11/29/2001) (Edit Search | Suggest Terms for My Search)
Focus: atleast5(transfer of venue) and "district of columbia" and date geq (11/29/2001) (Exit FOCUS™)
View: Full
Date/Time: Wednesday, November 29, 2006 - 6:05 PM EST

* Signal Legend:
● - Warning: Negative treatment is indicated
▬ - Questioned: Validity questioned by citing refs
▲ - Caution: Possible negative treatment
♦ - Positive treatment is indicated
◐ - Citing Refs. With Analysis Available

http://www.lexis.com/research/retrieve?_m=5df99ebcd2132f6ade3dc311ed542f7d&newS...   11/29/2006

❶ - Citation information available
* Click on any *Shepard's* signal to *Shepardize®* that case.

 About LexisNexis | Terms & Conditions
Copyright © 2006 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.